UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FIRST AMERICAN TITLE INSURANCE COMPANY,

Plaintiff,

v.                                                              Case No. 12-CV-1210

WESTBURY BANK,

Defendant.

# ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL AND DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION IN LIMINE

## I.  Facts and Procedural History

New Horizon Title, LLC engaged in an extensive fraud that resulted in more than $3.5 million in losses for which First American Title Insurance Company was ultimately responsible. In the present action, First American alleges that New Horizon's bank, Westbury Bank, bears some responsibility for these losses because it permitted New Horizon to continue the fraud despite warning signs that something was amiss, such as the fact that an account New Horizon referred to as its escrow account was overdrawn more than a thousand times, and New Horizon had bounced 348 checks for a total of $60 million. First Am. Title Ins. Co. v. Westbury Bank, 2013 U.S. Dist. LEXIS 54969, 1-3 (E.D. Wis. Apr. 17, 2013).

In an effort to support its assertion that Westbury was well-aware of these irregularities, First American seeks information related to certain fraud alerts that Westbury may have received related to the accounts of New Horizon and certain related individuals. This includes information

automatically generated by software that Westbury utilizes to monitor transactions for fraud. Westbury has not complied with this discovery demand on the basis that it believes it is barred from disclosing such information under the Bank Secrecy Act (BSA) and the Annuzio-Wylie Anti-Money Laundering Act (AML) and their implementing regulations. Thus, the parties turned to the court to resolve their dispute, with First American filing a motion to compel, (Docket No. 30), Westbury opposing the motion, and Westbury responding with its own motion in limine seeking to exclude certain evidence, (Docket No. 37). The pleadings on these motions are closed and each is ready for resolution.

## II. Applicable Law

National banks are required to file a suspicious activity report (SAR) to report certain suspicious activity to a person or agency designated by the Secretary of the Treasury. 31 U.S.C. § 5318(g)(1); 12 C.F.R. § 21.11. However, banks are prohibited from disclosing a SAR

> or any information that would reveal the existence of a SAR. Any national bank, and any director, officer, employee, or agent of any national bank that is subpoenaed or otherwise requested to disclose a SAR, or any information that would reveal the existence of a SAR, shall decline to produce the SAR or such information, citing this section and 31 U.S.C. 5318(g)(2)(A)(i)….

12 C.F.R. § 21.11(k)(1)(i). This prohibition does not include "[t]he underlying facts, transactions, and documents upon which a SAR is based…." 12 C.F.R. § 21.11(k)(1)(ii)(2). The privilege is unqualified and cannot be waived. Gregory v. Bank One, Ind., N.A., 200 F. Supp. 2d 1000, 1002 (S.D. Ind. 2002). There is no dispute that the information sought is otherwise discoverable under Rule 26. The question before this court is limited to whether the SAR privilege bars disclosure of the information the plaintiff seeks.

The policies underlying the SAR privilege are multifaceted. Regulators concluded that confidentiality fostered timely and candid reporting by banks. 75 Fed. Reg. 75,576 at 75,578. If a customer could not find out the bank made a report, the bank and its employees should not be concerned to forego making a report out of fear that doing so would interfere with the bank's relationship with its customer, lead to civil liability in the form of something such as a claim of defamation, or result in retaliation in any form, including violence from a criminal organization the bank's report served to disrupt. See 75 Fed. Reg. at 75,578; Whitney Nat'l Bank v. Karam, 306 F. Supp. 2d 678, 680 (S.D. Tex. 2004) (granting protective order barring disclosure of SARs in customer's defamation action against bank). Relatedly, "disclosure of a SAR could harm the privacy interests of innocent people whose names may be mentioned." Whitney, 306 F. Supp. 2d at 680 (citing Cotton v. Privatebank & Trust Co., 235 F. Supp. 2d 809, 815 (N.D. Ill. 2002); Weil v. Long Island Sav. Bank, 195 F. Supp. 2d 383, 388 (E.D.N.Y. 2001)); see also 75 Fed. Reg. at 75,578. Finally, confidentiality protects the integrity of investigations in that it prevented targets from learning they were being investigated or from individuals learning the means and methods banks utilized to detect fraud so as to better avoid detection. See 75 Fed. Reg. at 75,578; Cotton v. Privatebank & Trust Co., 235 F. Supp. 2d 809, 815 (N.D. Ill. 2002).

The defendant contends that the information the plaintiff seeks is "information that would reveal the existence of a SAR" and thus is protected from disclosure under 12 C.F.R. § 21.11(k)(1)(i). In the plaintiff's view, the information sought is, at most, "documents upon which a SAR is based," 12 C.F.R. § 21.11(k)(1)(ii)(2), and thus discoverable. The line between documents that would reveal the existence of a SAR and a document upon which a SAR is based is often unclear and courts have disagreed as to where that line falls.

3

Courts have differentiated documents depending upon the reason the record was initially created. If it was created in the ordinary course of business, it is discoverable like any other business record. Cotton, 235 F. Supp. 2d at 815. If, however, the record was produced solely with respect to the bank's obligation to submit a SAR, it is privileged. Id. The Court of Appeals of Washington relied upon the line drawn in Cotton to conclude that any internal report or information used to investigative methods are "undiscoverable supporting documentation." Norton v. U.S. Bank, NA, 324 P.3d 693, 699 (Wash. Ct. App. 2014); see also United States v. LaCost, 2011 U.S. Dist. LEXIS 43681 (C.D. Ill. Apr. 22, 2011) (relying upon Cotton dichotomy to find that SAR privilege barred criminal defendant from obtaining bank "incident reports that led to the filing of an SAR and other documents related to the filing of SARs" because "they would disclose whether an SAR has been prepared or filed").

### III. Analysis

The relevant regulation bars only disclosure of information that "would" reveal the existence of an SAR; it does not prohibit disclosure of information that "could" or "might" reveal the existence. This suggests the review of the document must be able to discern with effective certainty the existence of a SAR. This is the only way to read subsections 12 C.F.R. § 21.11(k)(1)(i) and (ii)(A)(2) consistently. "The underlying facts, transactions, and documents upon which a SAR is based," 12 C.F.R. § 21.11(k)(1)(ii)(2), are subject to disclosure. Simply because such facts may demonstrate that a bank was aware of a fraud that fit the requirements of a SAR, and a reasonable inference could be drawn that a bank will generally comply with federal regulations, this does not mean such information "would" reveal that the bank filed a SAR. No court has interpreted the privilege as barring a party from obtaining such ordinary factual discovery, despite the inferences that might be drawn.

Not all means or methods a bank may use to detect fraud or other financial irregularity are privileged simply because they might culminate in a SAR. "In most cases … the disclosure of supporting documentation would not reveal the filing of an SAR, and such documentation cannot be shielded from otherwise appropriate discovery simply because it has some connection to an SAR." Weil, 195 F. Supp. 2d at 389; see also Wiand v. Wells Fargo Bank, N.A., 981 F. Supp. 2d 1214, 1217 (M.D. Fla. 2013) (noting that courts have held "the SAR privilege does not shield from discovery reports, memoranda, or underlying transactional documents generated by a bank's internal investigation procedures"); United States v. Holihan, 248 F. Supp. 2d 179, 187 (W.D.N.Y. 2003) ("[A]ny supporting documentation which would not reveal either the fact that an SAR was filed or its contents cannot be shielded from otherwise appropriate discovery based solely on its connection to an SAR."); Gregory, 200 F. Supp. 2d at 1002 ("The Rule's requirement of confidentiality applies only to the SARs themselves and the information contained therein, but not to their supporting documentation.").

Although a bank may undertake "an internal investigation in anticipation of filing a SAR, it is also a standard business practice for banks to investigate suspicious activity." Freedman & Gersten, LLP v. Bank of Am., N.A., 2010 U.S. Dist. LEXIS 130167, 10 (D.N.J. Dec. 8, 2010). Simply stated, detecting fraud is a part of a bank's ordinary course of business. Thus, documents generated as part of this standard business practice of investigating potential fraud or other irregularities are discoverable. This remains true even if this fraud investigation parallels the process of preparing a SAR.

Turning specifically to the plaintiff's motion to compel, the plaintiff states it "does not seek any SAR or other documents or communications between the Bank and law enforcement or other banking authorities." (Docket No. 33 at 14.) However, request number 12 of the plaintiff's

First Request for Production of Documents seeks "each and every suspicious activity report ("SAR") issued by Westbury Bank…." (Docket No. 32-1 at 4.) Other requests appear to seek more factual documents of the type subject to disclosure.

Based upon the submissions of the parties, the court is hard-pressed to determine which side of the line any particular request falls. Accordingly, the court is willing to grant the plaintiff's motion to compel, but only to the extent that it comports with the law, as set forth herein. The privilege is limited to the SAR itself and "information that would reveal the existence of a SAR." Accordingly, any explicit statement as to whether or not a SAR was or was not filed is privileged. Such privileged information contained in an otherwise discoverable document shall be redacted. See In re Whitley, 2011 Bankr. LEXIS 4793 (Bankr. M.D.N.C. Dec. 13, 2011). But information that, with the aid of supposition or speculation, might tend to suggest to a knowledgeable reviewer whether a SAR was filed, is not privileged.

Therefore, within 14 days of the date of this order, the plaintiff shall resubmit its Requests for Production of Documents to the defendant. The defendant shall respond within 30 days.

Similarly, the plaintiff shall resubmit all appropriate questions that it requests the defendant's employee, Lisa Wentworth, answer from her May 19, 2014 deposition.

The defendant or its employees shall not include information in any produced documents nor answer questions that would indicate whether a SAR was or was not made. If the defendant has good cause to believe that fully complying with any of the revised documents requests would result in disclosure of documents that fall on the non-disclosure side of the line, it should respond with a specific, detailed objection. The plaintiff may then, if the matter remains unresolved after attempting to resolve the dispute in good faith as is required under Civ. L.R. 37, promptly file a supplemental motion to compel.

### IV. Motion in Limine

Finally, the court turns to the defendant's motion in limine seeking to exclude evidence relative to its compliance with BSA and AML regulations. (Docket No. 37.) The court concludes that this motion is premature, the admissibility of evidence being a matter for trial rather than discovery. Therefore, the motion is denied without prejudice.

**IT IS THEREFORE ORDERED** that the plaintiff's motion to compel, (Docket No. 30), is granted as set forth in this order. The defendant is directed to produce documents and Lisa Wentworth is directed to answer questions in accordance with the standards set forth herein.

**IT IS FURTHER ORDERED** that the defendant's motion in limine, (Docket No. 37), is denied without prejudice.

Dated at Milwaukee, Wisconsin this 29th day of August, 2014.

_____
AARON E. GOODSTEIN
U.S. Magistrate Judge